IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello

Civil Action No. 21-cv-01720-CMA-MEH

YOSEMITE DEVELOPMENT LLP,

    Plaintiff,

v.

OHIO SECURITY INSURANCE COMPANY,

    Defendant.

___

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

___

This matter is before the Court on Defendant Ohio Security Insurance Company's ("Ohio") Motion for Summary Judgment. (Doc. # 40.) For the following reasons, the Court denies the motion.

### I.   BACKGROUND[1]

This case arises from an insurance dispute over coverage for hail damage on an L-shaped commercial property located at 4650 S. Yosemite Street, Greenwood Village, Colorado (the "Property"), and owned by Plaintiff Yosemite Development LLP ("Yosemite"). (Doc. # 1-1; Doc. # 40-1 at 6, 151.)[2] Ohio has insured the Property since January 1, 2014. (Doc. # 41-1 at 279.) The policies issued by Ohio covered "direct

___

[1] The following material facts are undisputed. (Doc. # 40 at 3–10; Doc. # 41 at 2–11; Doc. # 42 at 2–6.)

[2] The Court cites the Bates stamped page number of the evidence in the parties' appendices.

physical loss" from hail. (Doc. # 40-1 at 8; Doc. # 41-1 at 293, 311.) The policies also contained the following relevant provision:

> 3. Duties in the Event of Loss Or Damage
>    a. You must see that the following are done in the event of loss or damage to the Covered Property:
>       (1)   . . .
>       (2)   Give us prompt notice of the loss or damage, including a description of the property involved.

(Doc. # 41-1 at 107.) Further, the policies specified:

> A. Covered Causes of Loss
>
> When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.
>
> B. Exclusions . . .
>    2. We will not pay for loss or damage caused by or resulting from any of the following:
>       a. . . .
>       d. (1) Wear and Tear;
>          (2) Rust or other corrosion, decay, deterioration, hidden or latent defect . . .
>          (4) Settling, cracking, shrinking or expansion . . . .

(*Id*. at 119–21.)

Yosemite's claim against Ohio arises from hail loss allegedly incurred either on June 19, 2018, or June 1, 2019. (Doc. # 40 at 5–9; Doc. # 41 at 2, 5, 8–10; Doc. # 42 at 3–6.) There are no known witnesses to the June 1, 2019 hailstorm. (Doc. # 40-1 at 53, 99, 106.) On June 20, 2020, a public adjuster, Compass Adjusting, Inc. ("Compass"), inspected the Property's roof at the request of Yosemite's Property Manager. (*Id*. at 17–18.) After the inspection, Compass recommended that Yosemite submit a hail damage claim to Ohio. (*Id*. at 18.) Around July 2020, a tenant reported a roof leak to Yosemite's

property manager. (*Id*. at 46.) Yosemite hired a roofing company to inspect the Property. (*Id*. at 19.) On July 28, 2020, Mr. Josetti with J&J Roofing inspected the Property and noted hail damage including to the metal sanding seam, EPDM membrane,[3] HVAC units and ducting, roof exhaust vents, and windows. (*Id*. at 19–20.) Mr. Josetti also noted that the roof was "very tired and near the end of its service life." (*Id*. at 20.)

Yosemite reported the loss to Ohio on August 4, 2020, 14 months after the June 1, 2019 hail event, and 26 months after the June 19, 2018 hail event. (*Id*. at 46.) When notifying Ohio, Yosemite's property manager stated she believed the damage dated from the June 1, 2019, storm. (*Id*.)

The parties do not dispute that the Property shows signs of hail strikes; however, the parties dispute the date the impacts occurred and the extent they damaged the Property. (*Id*. at 19–20, 46, 95–96, 122, 129–32, 152, 163–64; Doc. # 41-1 at 200, 244, 293.) No one, including the parties' experts, can state with 100% certainty that hail of a sufficient size to cause the impacts observed struck the Property on June 19, 2018, or June 1, 2019. (Doc. # 40-1 at 51–52, 95–96, 114–15, 120, 122, 129–32, 152; Doc. # 41-1 at 317.) Yosemite's weather expert claims hail as large as 1.5 inches fell at the Property on June 1, 2019, and its engineering expert claims hail up to 2.5 inches developed over the Property that day. (Doc. # 40-1 at 95–96, 152.) Ohio's engineer

---

[3] EPDM is a synthetic rubber roofing membrane used on low-slope roofs. *What is EPDM?*, EPDM ROOFING ASSOCIATION, https://epdmroofs.org/what-is-epdm/ (last visited Dec. 8, 2022). Yosemite's roof has a 60-milliliter EPDM membrane adhered to insulation below. (Doc. # 40-1 at 20, 41, 45, 120–24; Doc. # 41-1 at 306.)

concluded approximately 2-inch hail fell at the Property on June 19, 2018, and approximately one-inch hail struck the Property on June 1, 2019. (*Id*. at 129–32.)

The Property's EPDM roofing membrane showed no visible punctures, fractures, or tears. (*Id*. at 50, 120, 131–32.) Test cuts by both parties' engineering experts revealed dents, likely caused by hail, in the insulation under the EPDM. (*Id*. at 52, 131–32, 152–54.) To repair these dents, the Property's roof would have to be entirely replaced. (*Id*. at 131–32, 152–54.) In September 2020, Compass prepared and provided Ohio with an estimate for $291,156.26 to repair the Property. (*Id*. at 34, 141–42; Doc. # 41-1 at 189–97.) Also in September 2020, Ohio prepared an estimate of $2,251.28 for the Property's HVAC equipment and $49,356.24 for other hail damage including to the Property's roof. (Doc. # 41-1 at 183–84, 295–302.) However, in a coverage position letter dated March 8, 2021, Ohio denied Yosemite's claim by determining that (1) the hail damage to the Property occurred on June 19, 2018, and (2) the dents in the insulation "do not affect the performance of the roof," thus, the roof did not need to be replaced. (*Id*. at 200.)

Yosemite initiated this lawsuit on May 27, 2021, and Ohio removed the case to federal court on June 23, 2021. (Docs. ## 1, 1-1.) Yosemite alleges two claims for relief: (1) breach of contract, and (2) statutory unreasonable denial of benefits under Colo. Rev. Stat. §§ 10-3-1115 and -1116. (Doc. # 1-1 at 5–7.) Ohio filed the instant Motion for Summary Judgment on June 30, 2022. (Doc. # 40.) Yosemite filed its Response (Doc. # 41), and Ohio followed with its Reply (Doc. # 42). The matter is now ripe for review.

## II.  LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *See id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply

rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that would support a verdict in his favor. *Jaramillo v. Adams Cnty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671.

### III.   DISCUSSION

Ohio seeks summary judgment on both of Yosemite's claims. Ohio first argues that there are no genuine issues of material fact because Yosemite has not met its burden to demonstrate they promptly notified Ohio of their losses. (Doc. # 40 at 12–13.) Further, Ohio essentially argues that (1) there is insufficient evidence to establish hail actually struck the Property on June 1, 2019, and (2) even assuming hail of a sufficient size hit the Property on June 1, 2019, there is insufficient evidence to demonstrate it caused covered damage requiring a complete replacement of the Property's roof. (*Id*. at 13–16.) In response, Yosemite contends that their notice to Ohio was prompt because it occurred shortly after they discovered the hail damage. (Doc. # 41 at 12–14.) Further, Yosemite points to reports from experts hired by both parties which it argues demonstrate that factual issues exist as to whether damage-causing hail impacted the Property while it was insured by Ohio. (*Id.* at 13–16.)

Upon consideration of the Motion, the related briefing, and the applicable law, the Court finds that there are significant, genuine disputes of material fact that preclude

6

summary judgment on Yosemite's insurance claims. The parties agree on many of the material facts including that: (1) the Property's roof has evidence of hail strikes including on the insulation under the EPDM membrane, (2) Ohio insured the Property during both the 2018 and the 2019 hail events—at least one of which appears to be the cause of hail impacts and dents on the Property's roof, (3) the Property's EPDM membrane showed no visible punctures, fractures, or tears in 2020, and (4) Ohio denied Yosemite's claim. However, Ohio and Yosemite present different interpretations of an array of expert reports. Many of the disagreements revolve around the exact language used by weather and engineering experts and the extent to which such language demonstrates degrees of certainty in the experts' findings based on the available evidence.

The Court must "view the evidence in the light most favorable to the non-moving party." *Allen*, 119 F.3d at 839. Moreover, the Court is "mindful that a ruling which deprives a party of a determination of the facts by a jury 'should be cautiously and sparingly granted.'" *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 560 (10th Cir. 1996) (quoting *Cockrell v. Boise Cascade Corp.*, 781 F.2d 173, 177 (10th Cir. 1986)). The genuine disputes of material fact precluding summary judgment include, but are not limited to:

- whether Yosemite's property manager acted with or without "reasonable diligence" in not discovering the hail damage for at least 14 months;[4]

---

[4] *See 656 Logan St. Condo. Ass'n, Inc. v. Owners Ins. Co.*, 389 F. Supp. 3d 946, 950 (D. Colo. 2019) ("In the property/casualty insurance context, the duty to give notice 'arises when an insured, with reasonable diligence, can ascertain that the [property has been damaged by a

- whether hail struck the Property on June 1, 2019, and if so, if it was of sufficient size to cause the hail impacts observed in 2020;[5]
- whether the dents in the insulation constitute "direct physical loss" covered by the policy, including whether hail impacts resulted in loss of
    - adhesion between the EPDM membrane and the insulation below, and/or
    - performance, water shedding capabilities, or service life of the roof;
- assuming damage-causing hail did strike the Property on June 1, 2019, whether and to what extent the resulting damage requires complete replacement of the roof;
- whether and to what extent any "damage" to the roof was a result of noncovered "wear and tear" or defective construction or insulation; and
- whether Ohio acted unreasonably in denying coverage for hail damage, in part, because Yosemite's claim as filed specified June 1, 2019, rather than June 19, 2018, as the date of loss.

Because the facts relating to the alleged date of damage, the extent of that damage, whether the damage constitutes a covered loss, and what repairs, if any, are required are heavily disputed, summary judgment is inappropriate. *See Anderson*, 477 U.S. at

---

covered event].'" (quoting *Clementi v. Nationwide Mut. Fire Ins. Co.*, 16 P.3d 223, 226 (Colo. 2001) (alterations in original)); *see also 6 W. Apartments, LLC v. Ohio Cas. Ins. Co.*, No. 1:20-cv-02243-RBJ, 2021 WL 4949154, at *7 (D. Colo. Oct. 25, 2021) (finding delayed notice of weather-related property damage was prompt because "a jury could . . . find that plaintiff notified defendant in a reasonable amount of time after discovering each new bit of damage").

[5] *See Daubert v. Merrell Dow Pharm.*, 43 F.3d 1311, 1314 (9th Cir. 1995) ("Causation can be proved even when we don't know precisely **how** the damage occurred, if there is sufficiently compelling proof that the agent must have caused the damage.").

8

255 (when ruling on a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").

In sum, Ohio has not established that it is entitled to summary judgment. Although the parties agree on a general outline of the issues, they paint substantially different pictures of the parties' roles and responsibilities as a result of the events and the evidence. It will be up to the factfinder to decide the credibility of the experts, the weight to assign to their conclusions, and to resolve the disputed issues presented in this case.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. # 40) is DENIED.

DATED: December, 12, 2022

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
Senior United States District Judge